IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GUSTAVO ZAVALA,<br><br>                Petitioner,<br><br>    vs.<br><br>JAMES A. YATES, Warden,<br><br>                Respondent. | Case No. 2:09-cv-00775-JKS<br><br><br>MEMORANDUM DECISION |

Petitioner, Gustavo Zavala, a state petitioner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. When he originally filed his Petition, Zavala was in the custody of the California Department of Corrections, incarcerated at the Pleasant Valley State Prison in Coalinga, California, however his current incarceration status and location are unknown to this Court.[1] Respondent has filed an answer, and Zavala has not filed a traverse.

_____

[1] On July 30, 2009, Zavala notified this Court that his address had been changed to 717 Ward Rd., Los Banos, CA 93635. Docket No. 12. This appears to be the address of a private residence, however, this Court has no record that Zavala has been released from the custody of the California Department of Corrections. Upon conducting an inmate search with the California Department of Corrections ("CDC"), this Court cannot find an inmate by the name of "Gustavo Zavala" in the CDC.

PROCEDURAL HISTORY

The underlying charges in this case arose out of three separate incidents: 1) On February 26, 2004, law enforcement responded to a call of a man sleeping in a truck and found Zavala. They also found a baggy containing 4.5 grams of methamphetamine in the truck; 2) on March 30, 2006, Zavala was stopped for a traffic violation during which the officer discovered 3.6 grams of methamphetamine, a scale with methamphetamine residue and another baggie with 0.04 grams of methamphetamine; 3)  on August 17, 2006, Zavala was found in the possession of a stolen car and eventually confessed to stealing the vehicle.  Each of these incidents resulted in charges being filed against Zavala.

Zavala was appointed counsel ("appointed counsel") and on October 3, 2006, he pled no contest to one count of transportation of methamphetamine and one count of theft or unauthorized use of a vehicle and he admitted violating probation.  In exchange, the prosecution dismissed the remaining counts and cases against him and agreed to a sentencing lid of four years, four months in state prison.

After entering his plea and retaining new counsel ("retained counsel"), Zavala filed a motion to withdraw his plea on April 5, 2007.  Although Zavala was given written advisement of his rights before he entered his plea, he argued that the oral advisement of rights had been inadequate.  The court denied the motion and sentenced defendant to state prison for an aggregate term of four years four months.  Zavala appealed his conviction, and on October 9, 2008, the California Court of Appeal affirmed the judgment.  Zavala did not file a petition for review with the California Supreme Court.

On November 14, 2008, Zavala filed a petition for a writ of habeas corpus with the

California Supreme Court which was denied on January 14, 2009.  On March 19, 2009, Zavala

filed a Petition for a Writ of Habeas Corpus in this Court.  In his Petition to this Court, Zavala

raises seven claims for relief:

1.     The state court improperly denied Zavala's claim that his confession to the police
       was involuntary;

2.     The state court improperly denied Zavala's claim that the witness identification
       was unconstitutionally suggestive, that there was a failure to disclose the
       informant, and that the police falsified their report;

3.     The state court erred by denying Zavala's claim that he was mentally
       incompetent, and, therefore, unable to voluntarily and intelligently enter a plea;

4.     Zavala's plea agreement was coerced by his appointed counsel;

5.     Zavala's appointed counsel was ineffective for advising him to enter a plea of no
       contest;

6.     Zavala's retained counsel was ineffective for failing to request a certificate of
       probable cause to challenge the validity of his plea; and,

7.     Zavala's appointed counsel was ineffective for failing to advise him of the
       immigration consequences of his plea agreement.

Respondent concedes that all of Zavala's claims for relief are properly exhausted; while

Respondent claims that Zavala's third, fourth, and fifth claims are procedurally barred by

adequate and independent state grounds, in the discussion of each of these claims Respondent

has chosen to waive the procedural bar.

<u>STANDARD OF REVIEW</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[2]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[3]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[4]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[5]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[6]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[7]  "[A]bsent a specific constitutional

---

[2] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[3] *Williams*, 529 U.S. at 412.

[4] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[5] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[6] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[7] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[8]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[9]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[10]

In applying this standard, this Court reviews the last reasoned decision by the state court.[11]  State appellate court decisions that affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[12]  Under California's unique habeas procedure, a defendant who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[13]  This is considered as

---

[8] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[9] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[10] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[11] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[12] *Ylst*, 501 U.S. at 802-03.

[13] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002).

the functional equivalent of the appeal process.[14]  Under AEDPA, the state court's findings of

fact are presumed to be correct unless the petitioner rebuts this presumption by clear and

convincing evidence.[15]  This presumption applies to state trial courts and appellate courts alike.[16]

When there is no reasoned state court decision denying an issue presented to the state

court and raised in a federal habeas petition, this Court must presume that the state court decided

all the issues presented to it on the merits and perform an independent review of the record to

ascertain whether the state court decision was objectively unreasonable.[17]  In so doing, because it

is not clear that it did not so do, the Court presumes that the state court decided the claim on the

merits and the decision rested on federal grounds, giving the presumed decision the same

deference as a reasoned decision.[18]  The scope of this review is for clear error of the state court

ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground
> by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does
> not supply reasoning for its decision, but an independent review of the record is
> required to determine whether the state court clearly erred in its application of

---

[14] *Id.* at 222.

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[17] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[18] *Harrington v. Richter*, 562 U.S. ---,131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *see Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991).

6

controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[19]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[20]

## DISCUSSION

As noted above, Zavala raises seven grounds for relief.  Because a valid plea agreement could potentially foreclose  Zavala's first two grounds, this Court will first address all of the grounds which attack the validity of Zavala's plea agreement.  This Court will then address the remaining grounds in order, grouping similar claims together for clarity.

### Zavala Was Incompetent to Enter a Plea Agreement

Zavala claims that he was not competent during his plea and sentencing.  Specifically, Zavala argues that the trial judge had actual and constructive notice that Zavala was mentally unstable, but despite this, the court proceeded to accept his plea, in violation of Zavala's constitutional rights.

Whether Zavala was competent to enter a plea is arguably distinguishable from whether the trial court should have held a competency hearing.  However, Zavala has not attached any documentation, such as a psychiatric evaluation or a declaration from counsel, in support of his

---

[19] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[20] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Cf. Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)."

claim that he was incompetent at his plea hearing or sentencing.[21]  Rather, Zavala claims that the

record, itself, clearly reflects his incompetence.  Thus the proper inquiry is whether the trial

court erred by not conducting a competency hearing.

       Under California law, a defendant is presumed to be "mentally competent unless it is

proved by a preponderance of the evidence that the defendant is mentally competent."[22]  The

Supreme Court has upheld the constitutionality of this provision.[23]  Competence to stand trial

requires that a defendant have "sufficient present ability to consult with his lawyer with a

reasonable degree of rational understanding—and whether he has a rational as well as factual

understanding of the proceedings against him."[24]  A defendant's constitutional right to due

process is violated if his or her competency to stand trial was at issue and he or she did not

receive an adequate competency hearing.[25]  A trial judge must conduct a competency hearing

whenever the evidence before the trial judge raises a "bona fide doubt" about the defendant's

competence to stand trial.[26]  In making this determination, this Court examines only the

---

[21]  Zavala has attached affadavits from his mother, Adela Zavala, and his sister, Yvette Zavala, which essentially state the same thing: on the day he entered his plea, Zavala was suffering from bi-polar disorder, he was confused, and he was coerced into accepting the plea agreement under "false conditions."  Petition, pp. 45-51.

       In substance, these declarations make the same arguments that Zavala makes in his Petition.  Because the record clearly contradicts their statements, they are not persuasive to this Court.

[22] Cal. Pen. Code § 1369(f).

[23] *Medina v. California*, 505 U.S. 437, 452 (1992).

[24] *See Dusky v. United States*, 362 U.S. 402 (1960) (per curiam).

[25] *Pate v. Robinson*, 383 U.S. 375, 385 (1986).

[26] *See id.*; *see also de Kaplany v. Enomoto*, 540 F.2d 975, 979 (9th Cir. 1976) (en banc) (same).

8

information that was before the trial court.[27]  "A bona fide doubt exists if there is substantial
evidence of incompetence."[28]

On direct appeal, Zavala claimed that he was incompetent during his plea colloquy.  The
California Court of Appeal declined to issue a reasoned ruling on this issue because Zavala
failed to obtain a certificate of probable cause.[29]  Zavala again raised this claim in his habeas
petition to the California Supreme Court, but the court summarily denied it.  As noted above,
when there is no reasoned state court decision denying an issue presented to the state court and
raised in a federal habeas petition, this Court must presume that the state court decided all the
issues presented to it on the merits and perform an independent review of the record to ascertain
whether the state court decision was objectively unreasonable.[30]

After reviewing the record, there is no evidence that Zavala was unable to communicate
with his attorney or understand the proceedings against him.  Zavala indicated that he had
reviewed the plea agreement with his attorney, told the court that he understood the terms of the
agreement and stated that he had not been induced to enter into a plea by threats or promises.

---

[27] *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 489 (9th Cir. 1997).

[28] *Id.* (internal quotation marks and citations omitted).

[29]  California Penal Code § 1237.5 provides that a defendant may not take an appeal from
a judgment of conviction entered on a plea of guilty or nolo contendere unless he has filed in the
superior court a statement of certificate grounds, which go to the legality of the proceedings,
including the validity of his plea, and has obtained from the superior court a certificate of
probable cause for the appeal.  *People v. Mendez*, 969 P.2d 146, 153 (1999).  Issues that may be
raised without a certificate of probable cause include: (1) search and seizure issues for which an
appeal is provided under § 1538.5, subdivision (m); and (2) issues regarding proceedings held
subsequent to the plea for the purpose of determining the degree of the crime and the penalty to
be imposed.  *People v. Panizzon*, 913 P.2d 1061, 1064 (1996).

[30]  *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742.

Zavala stipulated to the factual basis for the charged crimes and even asked questions about possibly expunging his record.[31]  Zavala has failed to show any reliable evidence that he actually was incompetent at the time he entered his plea; accordingly, he was not entitled to a competency hearing.

Although Zavala was competent when he entered his plea, his Sixth Amendment right to a fair trial would nevertheless have been implicated if he were incompetent during his sentencing.[32]  The California Court of Appeal addressed whether the trial court erred for failing to conduct a competency hearing during the sentencing phase:

> Here, there was no substantial evidence of defendant's incompetence to be sentenced. Defendant's attorney never expressed a doubt as to defendant's competence. Rather, defendant's attorney simply noted that defendant had been newly diagnosed as bipolar in requesting residential treatment. There was no opinion by a psychologist or psychiatrist that defendant was incompetent. The trial court never expressed a doubt as to defendant's competence. The trial court noted that defendant seemed fidgety and unable to focus after he had been sentenced to state prison for four years four months and asked if defendant was under the influence of drugs. Defendant stated that he was not under the influence of drugs but instead was "just stressing over the whole situation, sir." There was no evidence that defendant lacked the mental capacity at the time he was sentenced to consult with his attorney with a reasonable degree of rational and factual understanding. Indeed, the record reflects an off-the-record discussion after which defendant's attorney stated, "My client is again asking me to emphasize to the Court that there are long-term drug programs in Sacramento that would be available to him." Such reflects that defendant understood the proceedings and was able to assist his attorney. Any mental condition defendant may have been recently diagnosed with had no bearing on the question of whether he could assist his attorney. The trial court observed defendant during sentencing and did not express a doubt as to defendant's competence.

---

[31]  Petition, pp. 306-316.

[32]  *Davis v. Woodford*, 384 F.3d 628, 646 (9th Cir. 2004) (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994)).

The trial court did not err in not declaring a doubt as to defendant's incompetence or in not conducting a competence hearing.[33]

Because the California Court of Appeal has ruled on the substance of this claim, this Court may only grant relief if that decision constituted an unreasonable application of clearly-established federal law or determination of the facts in light of the evidence presented in the state-court proceeding."[34]

Zavala has failed to meet his burden. The record indicates that the sentencing court was aware of Zavala's mental diagnoses. However, the fact that he was receiving therapy for a mental condition, standing alone, was not sufficient to place the trial court on notice that Zavala was incapable of understanding the proceedings or conferring with his appointed counsel.[35] Zavala next points to the fact that, after it imposed the sentence, the trial court noted that Zavala was fidgety and his eyes were not focused. Although Zavala now claims he was taking anti-depressants which left him disoriented, at the sentencing hearing, he stated that he was not under the influence of drugs and was "just stressing over the whole situation."[36] Further undercutting

---

[33] *People v. Zavala*, 2008 WL 4519039 4 (Cal. App. 2008).

[34] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75.

[35] *See Davis*, 384 F.3d at 646 (9th Cir. 2004) ("Davis may have been depressed, but his history, statements, and conduct did not approach . . . overwhelming indications of incompetence."); *see also Odle v. Woodford*, 238 F.3d 1084, 1089-90 (9th Cir.2001) (holding that it was error not to conduct competency hearing where petitioner had suffered severe trauma to his brain as a result of a car accident and had a 3 x 3 x 4-inch piece of his brain removed, and had a long subsequent history of psychiatric hospitalization and bizarre behavior); *Torres v. Prunty*, 223 F.3d 1103, 1105 (9th Cir. 2000) (concluding that district court erred by not holding competency hearing where court-appointed psychiatrist had diagnosed the petitioner as having a severe delusional (paranoid) disorder, testing indicated that the petitioner had brain damage resulting from head trauma, and petitioner had disruptive outbursts in court).

[36] *Zavala*, 2008 WL 4519039 at 4.

11

his claim of incompetence is the fact that Zavala conferred with his appointed counsel and promoted counsel to make the following inquiry:  "My client is again asking me to emphasize to the Court that there are long-term drug programs in Sacramento that would be available to him."[37] Thus, the record indicates that Zavala, although Zavala was nervous, he was capable of interacting with his counsel and comprehending the nature of the sentencing proceedings. Zavala is not entitled to relief on his third claim.

Zavala Was Coerced into Accepting a Plea Agreement

Zavala contends that his plea bargain was the result of unconstitutional coercion by the court and his appointed counsel.  Specifically, Zavala claims that he felt confident that he would be exonerated by a jury, but that his counsel and the court took advantage of his mental incompetence and pressured him into accepting a plea agreement that he did not want or understand.  Zavala raised this argument on direct appeal, but the California Court of Appeal declined to issue a reasoned ruling on this issue because Zavala failed to obtain a certificate of probability.  Zavala again raised this ground in his habeas petition to the California Supreme Court, but the court summarily denied it.  Because there is no reasoned state-court decision denying this claim, this Court must presume that the state court decided all the issues presented to it on the merits and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[38]

Zavala claims that on the day he entered his plea of no contest, he was having trouble focusing.  Zavala says that he told his attorney that he wanted to proceed to a jury trial, but his

---

[37] *Id.* at 3.

[38] *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742.

attorney told him he "had to accept the Courts [sic] offer otherwise [he] would regret it later on."[39]  Zavala then asked his attorney to have the "non-committed stolen vehicle charge" dropped and told his attorney he wanted to argue that he did not "knowingly" transport methamphetamine.[40]  His attorney did not reply to these inquiries.  Finally, when the Judge asked Zavala for a decision, he claims his "mind went blank" and that he was unable to answer.  At that point, he started to see flying objects and an imaginary friend named "Buddy" started yelling.[41]

Although Zavala claims that his plea was coerced, the thrust of his argument is that his mental condition left him unable to understand the nature of the proceedings against him.  As noted above, this argument is without merit.[42]  There is no evidence that either the court or Zavala's counsel improperly pressured him into taking a plea deal.  Zavala told the court that he had reviewed the plea agreement with his attorney and he understood its terms.  Zavala then asked the court about the possibility of having his record expunged and then proceeded to declare that his plea had not been induced by threats or promises.[43]  "Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in

---

[39]  Petition, p. 25.

[40]  Petition, p. 26.

[41]  Petition, p. 26.

[42]  In his fourth claim, Zavala asserts for the first time that he was hallucinating during his plea colloquy.  However, Zavala has submitted no evidence, declaration, or psychiatric report which would indicate that either his condition or the medications he was taking caused him to hallucinate.

[43]  Petition, pp. 309-16.

the face of the record are wholly incredible."[44]  Zavala has not shown that the court or his

counsel improperly pressured him into entering a plea.

Ineffective Assistance of Counsel

In his fifth, sixth, and seventh grounds, Zavala claims that he received ineffective

assistance of counsel.  Under *Strickland*, to demonstrate ineffective assistance of counsel, Zavala

must show both that his counsel's performance was deficient and that the deficient performance

prejudiced his defense.[45]  As noted previously, "federal habeas relief may not be granted for

claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary

to' federal law then clearly established in the holdings of this Court, § 2254(d)(1); or that it

'involved an unreasonable application of' such law; or that it 'was based on an unreasonable

determination of the facts' in light of the record before the state court."[46]  Thus, "[t]he pivotal

question is whether the state court's application of the *Strickland* standard was unreasonable.

This is different from asking whether defense counsel's performance fell below *Strickland*'s

standard."[47]  "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is

different from an incorrect application of federal law.'  A state court must be granted a deference

and latitude that are not in operation when the case involves review under the *Strickland*

---

[44] *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (citing *Marichoba v. United States*, 368 U.S. 487, 495-96 (1962)).

[45] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[46]  *Harrington*, 131 S. Ct. at 785 (2011).

[47]  *Id.*

14

standard itself."[48]  It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[49]

<u>Zavala's Counsel Was Ineffective for Advising Him to Enter a Plea of No Contest</u>

Zavala claims that his appointed counsel was ineffective for advising him to accept the prosecution's plea bargain because he was both mentally incompetent and innocent of both the crimes he was to plead to.  To the extent that Zavala is attempting to re-argue his competence, this Court has already addressed the merits of this argument.[50]

Zavala claims that he did not steal the car the police found him in on August 17, 2006, and that he did not "knowingly" transport methamphetamine.  Despite his actual innocence, Zavala claims that his attorney advised him to accept the prosecution's plea agreement.  Zavala raised this argument on direct appeal, but the California Court of Appeal declined to issue a reasoned ruling on this issue because Zavala failed to obtain a certificate of probability.  Zavala again raised this ground in his habeas petition to the California Supreme Court, but the court summarily denied it.  Because there is no reasoned state-court decision denying this claim, this Court must presume that the state court decided all the issues presented to it on the merits and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[51]

---

[48]  *Id.*

[49]  *See id.*

[50]  Again, Zavala has submitted no evidence, declaration, or psychiatric report which would indicate that either his condition or the medications he was taking left him unable to assist his defense counsel.  Indeed, Defense counsel was in the best position to determine Petitioner's competency, and counsel did not raise any issue as to Zavala's competency.

[51]  *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742.

A plea of no contest and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a no-contest plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack.[52]  Accordingly, the only issue properly before this Court in this whether counsel was so ineffective in advising Zavala to plead guilty that it rendered his plea unknowing, unintelligent and involuntary.

Zavala, however, faces a high hurdle in seeking to overturn a guilty plea on collateral review.  As the Supreme Court held in *Mabry*:

> It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.  It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired.  *In Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), we stated the applicable standard:
>
> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).[53]

Twenty years later the Supreme Court explained in *Iowa v. Tovar*:

---

[52] *United States v. Boce*, 488 U.S. 563, 569 (1989).

[53]  *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984) (internal quotation marks and citations omitted), *disapproved on other grounds in Puckett v. United States*, 556 U.S. ___, 129 S. Ct. 1423, 1430 n.1 (2009).

This Court recently explained, in reversing a lower court determination that a guilty plea was not voluntary: "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances– even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (emphasis in original).  We similarly observed in *Patterson*: "If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum." 487 U.S., at 294, 108 S.Ct. 2389 (internal quotation marks omitted).[54]

In this case, the record indicates that Zavala knew the consequences of his plea.  As noted several times previously, Zavala informed the court that he had reviewed the agreement with his attorney and understood the terms of the agreement.  The court then specifically reviewed the terms of the agreement, the potential sentences Zavala would be exposed to, and the fact that other charges would be dropped in exchange for his plea of no contest.  Simply put, there is no evidence of coercion, manipulation or misrepresentation by either his appointed counsel or the court.  Accordingly, Zavala has failed to show that he lacked a full and complete appreciation of all of the consequences flowing from his waiver when he entered into this bargained-for exchange.[55]  If Zavala wanted to proceed to trial on all of the charges against him, he was free to do so.  However, he waived that right when he knowingly and intelligently accepted the plea agreement.

<u>Counsel Was Ineffective for Failing to Request a Certificate of Probable Cause</u>

Zavala contends that his retained counsel, who he hired after he entered his plea, was ineffective for failing to request a certificate of probable cause, which would have allowed

---

[54] *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) (emphasis in the original).

[55] *Id.*

Zavala to challenge the voluntariness of his plea and his previous appointed-counsel's performance. Zavala raised this issue on direct appeal and the California Court of Appeal rejected it, holding, in part, that "[t]here [was] no indication in the record that defendant directed counsel to list these issues in the notice of appeal. Nor [was] there any indication in the record that retained counsel believed such issues should be pursued on appeal."[56] Accordingly, the court concluded that Zavala had "failed to demonstrate that retained counsel's performance was deficient in failing to request a certificate of probable cause asserting defendant's mental condition and prior counsel's ineffective assistance."[57]

The court also concluded that Zavala was unable to show the requisite prejudice:

The record reflects that defendant waived his constitutional rights in the plea form and that he understood the form and discussed it with counsel. Under the totality of the circumstances, defendant's plea was valid because the record reflected that it was voluntary and intelligent. There is no prejudice from counsel's failure to request a certificate of probable cause; the challenge to the trial court's denial of the motion to withdraw the plea would have been rejected as meritless.[58]

Zavala has failed to show that the factual conclusions of the California Court of Appeal were unreasonable. Aside from conclusory statements, Zavala has not submitted any evidence whatsoever to rebut the court's conclusion that "there [was] no indication in the record that [Zavala] directed counsel to list these issues in the notice of appeal."[59] Zavala has also not showed that his retained counsel somehow prevented him from obtaining a certificate of

---

[56] *Zavala*, 2008 WL 4519039 at 5.

[57] *Id.*

[58] *Id.* at 6-7.

[59] *Zavala*, 2008 WL 4519039 at 5.

probable cause on his own, in order to raise these issues.[60]  Finally, this Court agrees with the

California Court of Appeal's conclusion that the record of Zavala's plea colloquy indicates that

he was completely competent at the time he entered his plea.  Accordingly, a request for a

certificate of probability would likely have been denied.  Zavala is unable to show both deficient

counsel and prejudice.

<u>Counsel Was Ineffective for Failing to Advise Zavala of the Immigration Consequences of His
Plea Agreement</u>

In his seventh ground, Zavala claims his appointed counsel was ineffective for failing to

advise him of the adverse immigration consequences of his plea agreement.  Zavala raised this

claim in his state habeas petition filed with the California Supreme Court, and the court denied

the petition without comment.  Because there is no reasoned state-court decision denying this

claim, this Court must presume that the state court decided all the issues presented to it on the

merits and perform an independent review of the record to ascertain whether the state court

decision was objectively unreasonable.[61]

The Supreme Court has held that when the law is not succinct and straightforward as to

whether a guilty or no contest plea will result in deportation, a criminal defense attorney, in

order to provide effective assistance, must advise a non-citizen client that pending criminal

---

[60]  The California Court of Appeal noted:

Section 1240.1, subdivision (d) provides that an attorney's failure to perform the
duty in subdivision (b) "shall not foreclose [the] defendant . . . from raising any point or
argument on appeal; . . ."  A defendant may comply with section 1237.5 "either by
himself or through another, even if his counsel does not do so on his behalf.  But we do
not believe that it allows him not to comply without suffering the consequences."
*Zavala*, 2008 WL 4519039 at 5 (internal citations omitted).

[61]  *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742.

charges may carry a risk of adverse immigration consequences; when the deportation consequence is truly clear, the duty to give correct advice is equally clear.[62]  Thus, if Zavala's appointed counsel failed to advise him of potential immigration consequences of accepting a plea, then his performance was deficient.  Zavala would then need to prove prejudice.[63]

However, Zavala's claim that his appointed counsel did not inform him of the potential immigration consequences of accepting a plea is undercut by the record.  The plea agreement, which Zavala reviewed and signed, contained a provision informing him that the consequences of his plea included deportation if he was not a United States citizen.  Furthermore, during his plea colloquy, Zavala told the court that he had gone over the plea agreement with his attorney and that he understood the terms of the agreement.

As noted previously, "[s]olemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."[64]  Zavala's claim to this Court is vague, conclusory, and is not supported by any evidence.  On the other hand, the record strongly suggests that he was fully aware of the terms of

---

[62] *Padilla v. Kentucky*, 559 U.S.__, 130 S. Ct. 1473, 1483 (2010).  Zavala has failed to inform this Court of the nature of adverse immigration consequences he is now faced with. Accordingly, this Court is unable to discern whether Zavala's plea of no contest necessarily exposed him to mandatory deportation or whether it simply exposed him to a risk of adverse immigration consequences.  At the very least, Zavala's appointed counsel would have been under a duty to inform him that his plea *may* carry a risk of adverse immigration consequences.

[63] *Id.* at 1483-84.  To demonstrate prejudice where the defendant has pled guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  In *Padilla*, however, the Court also noted that "it is often quite difficult for petitioners who have acknowledged their guilt to satisfy *Strickland's* prejudice prong." 130 S. Ct. 1485.

[64] *Blackledge*, 431 U.S. at 73-74 (citing *Marichoba*, 368 U.S. at 495-96).

his plea agreement, including the provision informing him that the consequences of his plea included deportation if he was not a United States citizen.  Zavala has failed to rebut the presumption that he knowingly consented to all the terms of his plea agreement.

<u>Claims One and Two</u>

In his first claim, Zavala asserts that his confession regarding the stolen vehicle was involuntary, since he was under the influence of medication for his bi-polar condition.  In his second claim, Zavala contends that the witness identification was unconstitutionally suggestive, that the police and prosecution failed to disclose the informant, and that the police falsified their report.

These alleged constitutional violations occurred prior to the entry of Zavala's guilty plea.  Consequently, according to Respondent, review of these  claims is foreclosed.  The Supreme Court directly addressed the subject, stating:[65]

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea . . . .

This Court has already determined that Zavala's plea of no contest was voluntary and intelligent.  Accordingly, Zavala's first two claims, which allege pre-plea, constitutional violations are foreclosed by his plea of no contest.  Zavala is not entitled to relief on these grounds.

<u>CONCLUSION AND ORDER</u>

Zavala is not entitled to relief under any ground raised in the Petition.  Accordingly,

---

[65] *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

**IT IS HEREBY ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of

Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[66]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[67]

The Clerk of the Court is to enter judgment accordingly.

Dated: April 4, 2011

_____/s/ James K. Singleton, Jr._____
**JAMES K. SINGLETON, JR.**
United States District Judge

---

[66] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)).

[67] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.